## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR AN ARREST WARRANT

I, Greg Sheridan, Special Agent, Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), being duly sworn, state as follows:

1. I am a Special Agent with the ATF and have been so employed since 2009.

2. I submit this affidavit in support of a criminal complaint and warrant for the arrest of Tyrone PATTERSON for a violation of 18 U.S.C. § 922(e) (transporting firearms on a common carrier) and 18 U.S.C. § 371 (criminal conspiracy), and for the arrest of Junious FLEMMING for a violation of 18 U.S.C. § 371 (criminal conspiracy).

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is probable cause for the requested arrest warrant and does not set forth all of my knowledge about this matter.

## STATUTORY VIOLATION

4. The United States is conducting a criminal investigation of Tyrone PATTERSON regarding violations of 18 U.S.C. § 922(e) (transporting firearms on a common carrier) and 18 U.S.C. § 371 (criminal conspiracy), and of Junious FLEMMING for violating 18 U.S.C. § 371 (criminal conspiracy).

5. Section 922(e) states:

> [It] shall be unlawful for any person knowingly to deliver or cause to be delivered to any common or contract carrier for transportation or shipment in interstate or foreign commerce, to persons other than licensed importers, licensed manufacturers, licensed dealers, or licensed collectors, any package or other container in which there is any firearm or ammunition without written notice to the carrier that such firearm or ammunition is being transported or shipped; except that any passenger who owns or legally possesses a firearm or ammunition being transported aboard any common or contract carrier for movement with the passenger in interstate or foreign commerce may deliver said firearm or ammunition into the custody of the pilot, captain, conductor or operator of such

      common or contract carrier for the duration of the trip without violating any of the provisions of this chapter.

An individual "delivers" and "causes to be delivered" firearms when he carries them onto a train or another type of common carrier. *See United States v. Hartzog*, 983 F.3d 604 (4th Cir. 1993).

      6.      Additionally, federal law prohibits individuals from conspiring to: (i) engage in the business of dealing in firearms; (ii) transport into or receive in one's state of residence any firearm purchased or obtained outside that state; (iii) deliver a firearm to any person who resides in a different state; and (iv) transport firearms on a common carrier without giving the above-described notice. *See* 18 U.S.C. §§ 371, 922(a)(1)(A), 922(a)(3), 922(a)(5), 922(e). An individual engages in the business of dealing in firearms if he repeatedly sells firearms for pecuniary gain. *United States v. Tyson*, 653 F.3d 192, 200-201 (3d Cir. 2011).

## PROBABLE CAUSE

      7.      On December 14, 2020, Tyrone PATTERSON, a resident of Louisburg, North Carolina, purchased a FNH USA, LLC, model 509, 9 mm pistol, bearing serial number GKS0016923, from Steve's Guns, a federal firearms licensee ("FFL") located in Louisburg, North Carolina as part of a two-firearm sale.

      8.      A database search reveals that PATTERSON did not report this firearm stolen. On January 19, 2021, New Jersey State Police recovered the firearm described in paragraph 7 inside a Chevrolet Malibu searched in Hamilton, New Jersey, which borders the town of Trenton, New Jersey. One of the two persons inside the Malibu, Tyrik Johnson, was a convicted felon, while the other, Koi Allen, was an 18-year old male.

9. On December 22, 2020, PATTERSON purchased a German Sports Gun, Firefly model, 22 caliber pistol, bearing serial number F452644, from Cross Creek Outdoor Supplies, an FFL located in Henderson, North Carolina, as part of a three-firearm sale.

10. A database search reveals that PATTERSON did not report this firearm stolen. On February 3, 2020, police officers in Wall Township, New Jersey, located the firearm described in paragraph 9 in the possession of A.N., a juvenile. Wall Township is located approximately 41 miles from Trenton, New Jersey.

11. PATTERSON's public Facebook profile shows that he has several "friends" who live in Trenton, New Jersey.

12. PATTERSON travelled from North Carolina to New Jersey between the time he purchased the above-described firearms and the time they were recovered. According to Amtrak records, a ticket was bought for PATTERSON and scanned during the boarding process for a January 13, 2021, train ride from Raleigh, North Carolina, to Philadelphia, Pennsylvania. Likewise, a ticket was bought for PATTERSON and scanned during the boarding process for a January 14, 2021, train ride from Trenton, New Jersey, to Raleigh, North Carolina.

13. On January 13, 2021, PATTERSON made the following public Facebook post: "flights are dope but Amtrak hit different!!! IM OUT." Patterson then "checked in" on Facebook and showed that he was in Washington, D.C., at approximately 5:14 p.m., Baltimore, Maryland, at approximately 6:53 p.m., and Trenton, New Jersey, at approximately 9:12 p.m.

14. On January 14, 2021, PATTERSON posted on Facebook that he was in Raleigh, North Carolina, with the message "N I'm back."

15. On January 16, 2021, PATTERSON publicly stated on Facebook: "I heard that bag sit different if you invest a little energy into it. Trappin n travelin." Based on my training

and experience, the second sentence in this statement is indicative of someone who is engaged in the trafficking of firearms and/or narcotics.

16. Amtrak records also show that PATTERSON travelled from Raleigh, North Carolina, to Philadelphia, Pennsylvania, on February 12, 2021, and then took another train from Trenton, New Jersey, back to Raleigh on February 13, 2021.

17. Additionally, Facebook posts show that PATTERSON "checked in" to Trenton, New Jersey on the night of February 12, and that he posted a picture of himself at the Trenton Farmer's Market on February 13 with the caption, "Had to get my fix.  Haven't been here in 18 years."

18. A database search reveals that PATTERSON purchased six additional firearms between December 14, 2020, and January 8, 2021: (i) a Smith & Wesson, model SD40, 40 caliber pistol, bearing serial number FCW4350, from Steve's Guns in Louisburg, North Carolina on December 14, 2020; (ii) a Taurus, model G2C, 9mm pistol, bearing serial number ABH786407, from Cross Creek Outdoor Supplies in Henderson, North Carolina on December 22, 2020; (iii) a Smith & Wesson, model SD9VE, 9mm pistol, bearing serial number FCR9391, from Cross Creek Outdoor Supplies in Henderson, North Carolina on December 22, 2020; (iv) a Smith & Wesson, model SD40, 40 caliber pistol, bearing serial number FCW5865, from Steve's Guns in Louisburg, North Carolina on January 8, 2021; (v) a Beretta, model APX, 9mm pistol, bearing serial number AO95255X, from Steve's Guns in Louisburg, North Carolina, on January 8, 2021; and (vi) a Canik, model TP-9SA, 9mm pistol, bearing serial number T6472-20AP09892, from Steve's Guns in Louisburg, North Carolina on January 8, 2021.  PATTERSON also purchased at least two firearms on February 24, 2021, and a third firearm on February 25, 2021.

19. On March 8, 2021, PATTERSON purchased nine more firearms from Perry's Gun Shop in Wendell, North Carolina.

20. On the morning of March 9, 2021, PATTERSON boarded an Amtrak train in Raleigh, North Carolina, with a destination of Philadelphia, Pennsylvania. The train was scheduled to arrive in Philadelphia between 6:00 p.m. and 7:00 p.m.

21. Amtrak officials have confirmed that PATTERSON never provided written notice that he would be transporting firearms on March 9, 2021, and that he did not deliver any firearms into the custody of Amtrak when he boarded the train as is required when travelling upon Amtrak and carrying firearms. I am aware that Amtrak is a common carrier train and transportation system that moves goods and travelers across state lines throughout various states and regions of the United States and is a common carrier engaged in interstate commerce.

22. A database search reveals that neither Tyrone PATTERSON nor Junious FLEMMING are licensed to import, manufacture, collect, or deal firearms under the federal provisions of Chapter 44, Title 18, United States Code.

23. On March 9, 2021, at approximately 7:00 p.m., agents executed a search warrant at 30th Street Station in Philadelphia, Pennsylvania, and located ten firearms in Tyrone PATTERSON's luggage soon after he departed an arriving Amtrack train. The recovered firearms were a Springfield Model Hellcat (Serial #BA107218) 9mm handgun, a SCCY Industries Model CPX1 CB (Serial #230829) 9mm handgun, a Taurus Model G3 (Serial #ACA438678) 9mm handgun, a Taurus Model G3 (Serial #ACA439483) 9mm handgun, a Taurus Model G3 (Serial #ACA439697) 9mm handgun, a Taurus Model G3 (Serial #ACA439485) 9mm handgun, a Taurus Model G3 (Serial #ACA439405) 9mm handgun, a Taurus Model G3 (Serial #ACA396052) 9mm handgun, a Taurus Model G2C (Serial

#ACB530097) 40 caliber handgun, and a Taurus Model G2C (Serial #ACB504498) 40 caliber handgun.

24.     Following the execution of the search warrant, an interview of Tyrone PATTERSON was conducted.  Tyrone PATTERSON was read his *Miranda* rights and agreed to provide a statement to law enforcement.

25.     During his interview, Tyrone PATTERSON stated that, in the fall of 2020, he and his uncle, Junious FLEMMING, began discussing the acquisition of firearms.  PATTERSON subsequently began straw purchasing firearms for FLEMMING and others at gun stores in North Carolina.  Since the fall of 2020, PATTERSON straw purchased approximately 40 firearms from gun stores in North Carolina.

26.      Tyrone PATTERSON stated that on two separate occasions in 2020, Junious FLEMMING and a second person traveled to North Carolina in an automobile, met with PATTERSON, and transported him to a gun store, where PATTERSON purchased firearms on behalf of FLEMMING.  Once the firearms transactions were completed, PATTERSON exited the gun store and turned the purchased firearms over to FLEMMING.  FLEMMING and his associate then drove back to New Jersey in possession of the purchased firearms.

27.     PATTERSON also recalled two additional instances where he straw purchased firearms on behalf of FLEMMING.  PATTERSON stated that on those two occasions, he straw purchased firearms in North Carolina and then utilized Amtrak train to illegally transport the purchased firearms from North Carolina to New Jersey, where the firearms were turned over to Junious FLEMMING.  The firearms were transported onto Amtrak trains by PATTERSON in luggage, stored on the trains in close proximity to his person, and transported to Pennsylvania on the trains.  Once PATTERSON arrived in Pennsylvania with the firearms, he was met by

FLEMMING, who drove him to the Trenton, New Jersey area where the firearms were turned over to FLEMMING. On these trips, PATTERSON witnessed FLEMMING sell some of the firearms that PATTERSON had purchased.

28. PATTERSON recalled that on March 1, 2021, he transported 12 firearms straw purchased by himself and another known person to FLEMMING. PATTERSON stated that on that particular occasion, he was transported in a vehicle by his girlfriend's daughter from North Carolina to Pennsylvania. Once PATTERSON and reached Pennsylvania with the purchased firearms, PATTERSON met with FLEMMING at a shopping center in Pennsylvania and turned the firearms over FLEMMING.

29. In exchange for obtaining approximately 40 firearms on behalf of FLEMMING, PATTERSON was paid a total of approximately $1,100 by FLEMMING. In all instances where PATTERSON illegally straw purchased firearms on behalf of FLEMMING, Tyrone PATTERSON was provided the money needed to purchase the firearms in advance by FLEMMING. In addition, the firearms that were to be purchased by PATTERSON were identified by FLEMMING in advance of the straw purchases. Both PATTERSON and FLEMMING knew the firearms purchased in North Carolina by PATTERSON were to be transported to New Jersey where they were to be sold by FLEMMING for profit.

30. After being approached by agents at 30th Street Station, PATTERSON made a recorded phone call to FLEMMING. On the call, PATTERSON asked FLEMMING if he wanted PATTERSON to separate out the "straps." Based on my training and experience, a "strap" is a term for a firearm. In response, FLEMMING said that five of the Taurus firearms were for his brother.

31.     During his interview, PATTERSON showed agents payments made on "Cash App" from a person named "junious flemming."  The photograph associated with this person's "Cash App" profile is a picture of FLEMMING.

32.     According to the Cash App records shown by PATTERSON to agents, FLEMMING has sent $14,000 to PATTERSON, including $4,008 on March 8, 2021; $315 on February 27, 2021; $2,400 on February 24, 2021; $1,080 on February 16, 2021; $500 on February 11, 2021; $415 on February 9, 2021; $340 on February 8, 2021; $500 on January 30, 2021; $1,200 on January 25, 2021; $530 on January 24, 2021; $350 on January 12, 2021; $920 on January 8, 2021; and $1,200 on January 6, 2021.

33.     PATTERSON also showed agents text messages between himself and a person saved in PATTERSON's phone as "Junious Flemming," with phone number 609-356-9530, whom PATTERSON identified as FLEMMING.  PATTERSON gave agents consent to search his phone.  On March 4, 2021, FLEMMING sent a list of firearms to PATTERSON, and stated "try and price them."  On February 25, 2021, FLEMMING asked PATTERSON to send him a picture of a firearm, and PATTERSON responded by sending FLEMMING two such pictures.  On February 24, 2021, PATTERSON sent FLEMMING two pictures of firearms, FLEMMING said "I need you to do me a favor," PATTERSON replied "wassup," and FLEMMING said "we got to look for two more for good prices so I can get something and we can try to get you something out of the deal before you leave."  PATTERSON then sent FLEMMING photographs of approximately nine firearms.  Additionally, the text messages between PATTERSON and FLEMMING include photographs of approximately 35 firearms.  Agents are continuing to review the messages to collect additional inculpatory information.

34. After PATTERSON called FLEMMING, FLEMMING arrived at 30th Street Station to pick up PATTERSON in a black Chevrolet Malibu with a third person. When FLEMMING arrived, PATTERSON met him while wearing an audio recording device. In a recorded conversation, FLEMMING and PATTERSON talked about where to put the firearms in the vehicle. Agents then arrested FLEMMING, who agreed to give a recorded statement after being read his *Miranda* rights. FLEMMING initially denied any criminal wrongdoing during his interview, but subsequently made the below described inculpatory statements.

   a. After being confronted with the phone call that PATTERSON made to him earlier that evening, FLEMMING stated that he and PATTERSON had talked on the call about how to separate out two Taurus firearms from the remaining guns. FLEMMING also stated that he was paid $120 to pick up PATTERSON on March 9, 2021, that he and PATTERSON discussed how the firearms could be separated, and that he knew that PATTERSON had purchased the firearms in North Carolina in order to deliver them in New Jersey.

   b. FLEMMING stated that, on an unspecified date, he travelled down to North Carolina, picked up firearms, and returned with those firearms to New Jersey.

   c. FLEMMING stated that, sometime in January 2021, he picked up PATTERSON from 30th Street Station in Philadelphia, Pennsylvania and then drove PATTERSON and his luggage to Trenton, New Jersey. According to FLEMMING, he subsequently drove PATTERSON around West Trenton, New Jersey, and PATTERSON had a bag which FLEMMING believed carried firearms. FLEMMING stated that he believed PATTERSON was

delivering the firearms to unknown people, and that he was paid $120 for driving around PATTERSON.

35. Based on the foregoing information, agents arrested PATTERSON and FLEMMING on the night of March 9, 2021.

## CONCLUSION

36. Based on the foregoing facts, I respectfully submit that there is probable cause to believe that, on or about March 9, 2021, Tyrone PATTERSON violated Title 18, United States Code, Section 922(e) (transporting firearms on a common carrier). There is also probable cause to believe that, between the fall of 2020, and March 9, 2021, in the Eastern District of Pennsylvania and elsewhere, PATTERSON and FLEMMING violated Title 18, United States Code, Section 371 (criminal conspiracy) by conspiring to engage in the business of dealing firearms, transport firearms across state lines, deliver firearms to a resident of a different state, and transport firearms on a common carrier. *See* 18 U.S.C. §§ 371, 922(a)(1)(A), 922(a)(3), 922(a)(5), 922(e).

/s/ Greg Sheridan
Greg Sheridan
Special Agent, ATF

Sworn to and subscribed
before me this 10th
day of March, 2021

/s/ Lynne A. Sitarski
HONORABLE LYNNE A. SITARSKI
United States Magistrate Judge
Eastern District of Pennsylvania